2022 IL App (4th) 220120-U

NOS. 4-22-0120, 4-22-0121, 4-22-0122 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 7, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
|     Petitioner-Appellee, | ) | No. 19JA49 |
|     v.      (No. 4-22-0120) | ) | |
| Ashley D., | ) | |
|     Respondent-Appellant). | ) | |
| ------------------------------------------------------------- | ) | |
| *In re* V.M., a Minor | ) | No. 19JA50 |
| | ) | |
| (The People of the State of Illinois, | ) | |
|     Petitioner-Appellee, | ) | |
|     v.      (No. 4-22-0121) | ) | |
| Ashley D., | ) | |
|     Respondent-Appellant). | ) | |
| ------------------------------------------------------------- | ) | |
| *In re* J.K., a Minor | ) | No. 19JA51 |
| | ) | |
| (The People of the State of Illinois, | ) | |
|     Petitioner-Appellee, | ) | |
|     v.      (No. 4-22-0122) | ) | Honorable |
| Ashley D., | ) | John C. Wooleyhan, |
|     Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed the trial court's judgments, concluding the court's findings respondent was an unfit parent and it was in the minors' best interests to terminate respondent's parental rights were not against the manifest weight of the evidence.

¶ 2    Respondent mother, Ashley D., appeals from the trial court's judgments

terminating her parental rights to A.S. (born April 28, 2014), V.M. (born January 1, 2016), and J.K. (born December 28, 2016). On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minors' best interests to terminate her parental rights are against the manifest weight of the evidence. In addition, respondent argues her counsel provided ineffective assistance as it related to defending against one of the State's allegations of unfitness. For the reasons that follow, we affirm the trial court's judgments.

¶ 3                                    I. BACKGROUND

¶ 4         The parental rights of the minors' biological fathers were also terminated during the proceedings below. They are not, however, parties to this appeal.

¶ 5                        A. Motions to Terminate Parental Rights

¶ 6         In March 2021, the State filed motions to terminate respondent's parental rights to the minors. In the motions, the State alleged respondent was an unfit parent in that she (1) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from her care during certain nine-month periods following the minors' October 21, 2019, adjudications of neglected (750 ILCS 50/1(D)(m)(i) (West 2020)); (2) failed to make reasonable progress toward the return of the minors to her care within certain nine-month periods following the minors' adjudications of neglected (750 ILCS 50/1(D)(m)(ii) (West 2020)); and (3) was depraved (750 ILCS 50/1(D)(i) (West 2020)). The State identified the nine-month periods as October 21, 2019, to July 20, 2020, and July 21, 2020, to April 20, 2021. The State further alleged it was in the minors' best interests to terminate respondent's parental rights and appoint the Department of Children and Family Services (DCFS) as guardian with the power to consent to adoption.

¶ 7                                    B. Fitness Hearing

¶ 8    In October 2021, the trial court held a fitness hearing. With respect to respondent, the State presented testimony from a caseworker who had been assigned to the minors' cases since September 2019, evidence of three felony convictions, an integrated assessment, and several service plans. Respondent presented her own testimony. The following is gleaned from the evidence presented.

¶ 9    In August 2018, respondent committed two criminal offenses. On August 4, respondent committed the unlawful possession of methamphetamine, a Class 3 felony. On August 28, respondent committed the unlawful possession of methamphetamine with the intent to deliver, a Class 1 felony. Respondent was later convicted of both offenses.

¶ 10    In June 2019, the minors were taken into DCFS care following a reported incident of domestic violence between respondent and her paramour. Specifically, respondent reported her paramour had choked her and she had a history of domestic violence with him. At the time of the report, it was also suspected methamphetamine use was occurring in the home. After the minors were taken into care, it was recommended respondent complete certain services related to domestic violence, parenting education, mental health, substance abuse, cooperation, and visitations. The service recommendations were incorporated into service plans, and respondent's progress on the service recommendations was evaluated at various points.

¶ 11    In December 2019, respondent's progress on the service recommendations was evaluated for the period of June 2019 through December 2019. Respondent rated unsatisfactory on most of the service recommendations. Respondent did not fully engage with domestic violence services, having attended only a couple sessions, and despite having an order of protection, she also had contact with her former paramour. Respondent did not engage in a parenting education class. Respondent did not complete mental health or substance abuse assessments. Although she

denied the use of illegal substance, she tested positive for methamphetamine. Respondent attended only four of eight visitations. Two of the absences were failures to appear, and the other two absences were the result of a positive drug screen and failing to appear for a drug screen. Visitations were suspended on November 26, 2019. A service recommendation to maintain suitable housing was added to the service plan.

¶ 12        In June 2020, respondent's progress on the service recommendations was evaluated for the period of December 2019 through June 2020. Respondent rated unsatisfactory on most of the service recommendations. She did not engage in any of the recommended services for the majority of this period. Between December 2019 and March 2020, respondent had no contact with the minors' caseworker. On February 27, 2020, respondent was incarcerated on a Class 3 felony charge of unlawful possession of methamphetamine, a charge for which she was later convicted. In May 2020, respondent admitted to the minors' caseworker that she had been using methamphetamine prior to her incarceration. Respondent reported her incarceration was the "wake up call that she needed." While incarcerated, respondent began taking prescribed medications for her mental health issues.

¶ 13        In December 2020, respondent's progress on the service recommendations was evaluated for the period of June 2020 through December 2020. Respondent rated unsatisfactory on the mental-health and parenting-education service recommendations. After her release from incarceration in July 2020, respondent began to engage in services and obtained suitable housing and employment. Respondent tested positive for alcohol on a drug screen but reported she had taken cough medicine due to an illness. During this period, the minors disclosed previous sexual and physical abuse while in respondent's care. Respondent did not acknowledge or process the minors' disclosures. Respondent asserted she had not harmed the minors, nor did she ever witness

- 4 -

her former paramour harming them. A service recommendation to address the reported sexual abuse was added to the service plan.

¶ 14        In June 2021, respondent's progress on the service recommendations was evaluated for the period of December 2020 through June 2021. Respondent rated unsatisfactory on the mental health, substance abuse, cooperation, and sexual abuse service recommendations. Respondent had three positive drug screens for alcohol. From December 2020 through February 2021, respondent had no contact with the minor's caseworker. Respondent later admitted to being in a relationship with a convicted felon during that period. Respondent testified she ended the relationship after noticing "red flags," which she had learned about through the services she completed. Respondent continued to not acknowledge or process the sexual and physical abuse disclosed by the minors, instead taking the position that the minors had been coached to make the allegations.

¶ 15        Overall, respondent believed she was doing her best to complete the service recommendations. Respondent testified she continued to attend the services at the time of the fitness hearing. Respondent asked about the well-being of the minors and for updated photographs of them. With respect to communicating with the minors after visitations were suspended, respondent testified, "I wrote one letter that they were supposed to give to them, but then they ended up saying they couldn't. But I write letters to them daily in one of my books." Respondent testified she also purchased the minors Christmas gifts in 2019.

¶ 16        The minors' caseworker believed respondent had not made reasonable progress to have the minors returned to her care during October 21, 2019, to July 20, 2020, or July 21, 2020, to April 20, 2021.

¶ 17        Based on this information, the trial court found respondent was an unfit parent for all the reasons alleged in the State's motions to terminate parental rights.

¶ 18                                    C. Best-Interests Hearing

¶ 19            In February 2022, the trial court conducted a best-interests hearing. The State presented testimony from a child welfare specialist who had been assigned to the minors' cases since November 2021. Respondent presented testimony from a therapist who had worked with her for about a year-and-a-half and a community support worker who had worked with her since August 2020. The following is gleaned from the testimony presented.

¶ 20            Since June 2019, the minors had been in the care of their foster parents. The minors appeared bonded to their foster parents. They looked to their foster parents for love and nurture. They referred to their foster parents as "mom" and "dad." The foster parents assured the minors' schoolwork was completed and attended parent/teacher conferences. They also assured the minors attended medical appointments and took their prescribed medications. All three minors had been diagnosed with trauma and stress disorders. The foster parents were willing to provide the minors with permanency through adoption.

¶ 21            The minors had not visited with respondent since November 2019. Respondent inquired about the well-being of the minors and asked for visits to be reinstated. Respondent loved the minors and expressed a desire for them to be returned to her care. Respondent's home had bedrooms set up for the minors. Respondent was unemployed but working with an employment specialist to find employment. Respondent's therapist testified about respondent's recent improvements and progress. Respondent's community support worker described respondent as "probably the most motivated person I have worked with."

¶ 22            The child welfare specialist believed it would be in the minors' best interests to terminate respondent's parental rights and to allow the minors' foster parents to adopt.

¶ 23            Based on this information, the trial court found it would be in the minors' best

interests to terminate respondent's parental rights. The court thereafter entered written orders terminating respondent's parental rights to each minor.

¶ 24　　　This appeal followed.

¶ 25　　　　　　　　　　II. ANALYSIS

¶ 26　　　On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minors' best interests to terminate her parental rights are against the manifest weight of the evidence. In addition, respondent argues her counsel provided ineffective assistance as it related to defending against the State's allegation of depravity. The State disagrees with respondent's arguments.

¶ 27　　　　　　　　　　A. Unfitness Finding

¶ 28　　　Respondent asserts the trial court's finding she was an unfit parent is against the manifest weight of the evidence.

¶ 29　　　In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 30　　　The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)). Section 1(D)(m)(ii) provides, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected." *Id.*

¶ 31　　　"Reasonable progress" has been defined as "demonstrable movement toward the

goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

¶ 32         In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Id.*

¶ 33         In this case, the relevant time period was October 21, 2019, to July 20, 2020. During that period, the evidence showed respondent (1) rated unsatisfactory on most of the service recommendations, (2) had a period of no contact with minors' caseworker, (3) admitted to using methamphetamine, and (4) was incarcerated on a charge of unlawful possession of methamphetamine. Given the information gleaned from the evidence presented, we find the trial court's unfitness finding based on respondent's failure to make reasonable progress towards the return of the minors to her care during this period is not against the manifest weight of the evidence.

¶ 34         As only one ground for a finding of unfitness is necessary to uphold the trial court's judgments, we need not consider the other grounds for the court's unfitness finding, including respondent's claim that her counsel provided ineffective assistance as it related to defending against one of those grounds. See *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 35                    B. Best-Interest Findings

¶ 36          Respondent also asserts the trial court's findings it was in the minors' best interests to terminate her parental rights are against the manifest weight of the evidence.

¶ 37          In a proceeding to terminate parental rights, the State must prove termination is in the child's best interests by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367, 818 N.E.2d 1214, 1228 (2004); see also 705 ILCS 405/1-3(4.05) (West 2020) (setting forth several factors a trial court must consider when determining whether termination of parental rights would be in a child's best interest). A trial court's best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33, 147 N.E.3d 953. Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 38          The evidence at the best-interests hearing showed the minors had resided with their foster parents for over two-and-a-half years. They were bonded to their foster parents, and their needs were being met. They referred to their foster parents as "mom" and "dad." The foster parents expressed a willingness to provide the minors with permanency through adoption. While respondent had shown an improvement in her circumstances and a continued interest in maintaining the parent-child relationships with the minors, respondent's interests had to yield to the minors' interests. See *D.T.*, 212 Ill. 2d at 364. Given the information gleaned from the evidence presented, we find the trial court's findings it was in the minors' best interests to terminate respondent's parental rights are not against the manifest weight of the evidence.

¶ 39                         III. CONCLUSION

¶ 40          We affirm the trial court's judgments.

¶ 41          Affirmed.